## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| JEOFFREY L. BURTCH, CHAPTER 7 TRUSTEE, FACTORY 2-U STORES, INC., et al., | ) ) ) ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Civil Action No. 1:07-cv-00556-JJF-LPS |
|  | ) | |
| MILBERG FACTORS, INC., CAPITAL FACTORS, INC., THE CIT GROUP/COMMERCIAL SERVICES, INC., GMAC COMMERCIAL FINANCE LLC, HSBC BUSINESS CREDIT (USA) INC., ROSENTHAL AND ROSENTHAL, INC., STERLING FACTORS CORPORATION, WELL FARGO CENTURY, INC., | ) ) ) ) ) ) ) ) ) | |
|  | ) | |
| Defendants. | ) ) | |

**REPLY BRIEF OF DEFENDANTS GMAC COMMERCIAL FINANCE LLC,
STERLING FACTORS CORPORATION AND WELLS FARGO CENTURY, INC.
<u>IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS</u>**

EDWARDS ANGELL PALMER & DODGE LLP
Stuart M. Brown (#4050)
Denise Seastone Kraft (#2778)
Mark D. Olivere (#4291)
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 777-7770
smbrown@eapdlaw.com
dkraft@eapdlaw.com
molivere@eapdlaw.com

Counsel for Defendants GMAC Commercial
Finance LLC, Sterling Factors Corporation,
and Wells Fargo Century, Inc.

OF COUNSEL:
Daniel Wallen
Bernard Beitel
Lloyd M. Green
OTTERBOURG, STEINDLER
HOUSTON & ROSEN, P.C.
230 Park Avenue
New York, New York 10169
Tel: (212) 661-9100

Dated:  April 2, 2008

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................................ii

I.     INTRODUCTION ........................................................................................................2

II.    ARGUMENT .................................................................................................................7

       A.  PLAINTIFF'S OPPOSITION MISSTATES THE
           PLEADING REQUIREMENTS IN THE AFTERMATH
           OF TWOMBLY ...................................................................................................7

       B.  THE EXCHANGE OF CONTEMPORANEOUS CREDIT
           INFORMATION DOES NOT GIVE RISE TO A CLAIM UNDER
           SECTION 1 OF THE
           SHERMAN ACT .............................................................................................14

       C.  PLAINTIFF'S ALLEGATIONS OF A BOYCOTT DO NOT
           WITHSTAND SCRUTINY...............................................................................16

       D.  PLAINTIFF'S ALLEGATIONS OF ANTITRUST INJURY ARE
           MERITLESS......................................................................................................19

III.   CONCLUSION............................................................................................................20

# TABLE OF AUTHORITIES

Page

**Cases**

Bell Atlantic Corp. v. Twombly,
___ U.S. __, 127 S. Ct. 1955 (2007) ................................................................passim

Bldg. Materials Corp. of Am. v. Rotter,
2008 U.S. Dist. LEXIS 11917 (E.D. Pa. Feb. 15, 2008) ........................................19

Catalano, Inc. v. Target Sales, Inc.,
446 U.S. 643, 100 S.Ct. 1925 (1980) .....................................................................16

Conley v. Gibson,
355 U.S. 41, 78 S.Ct. 99 (1957) ...............................................................................9

Cosmetic Gallery, Inc. v. Schoeneman Corp.,
495 F.3d 46 (3d Cir. 2007) .................................................................................4, 8

De Filippo v. Ford Motor Co.,
516 F.2d 1313 (3d Cir.),
cert. denied, 423 U.S. 912, 96 S.Ct. 216 (1975) ............................................18, 19

DM Research, Inc. v. Coll. of Am. Pathologists,
170 F.3d 53 (1st Cir. 1999) ......................................................................................4

Eichorn v. AT&T Corp.,
248 F.3d 131 (3d Cir.),
cert. denied, 534 U.S. 1014, 122 S.Ct. 506 (2001).................................................17

Hackman v. Dickerson Realtors, Inc.,
520 F. Supp. 2d 954 (N.D. Ill. 2007)........................................................................4

IDT Corp. v. Building Owners & Managers Assn. Intl.,
2005 U.S. Dist. LEXIS 33208 (D. N.J. Dec. 14, 2005)..........................................17

In re Baby Food Antitrust Litig.,
166 F.3d 112 (3d Cir. 1999) ...................................................................................13

In re Ditech Communs. Corp. Secs. Litig.,
2007 U.S. Dist. LEXIS 78411 (N.D. Cal. Oct. 11, 2007) ......................................12

In re Late Fee & Over-Limit Fee Litig.,
528 F. Supp. 2d 953 (N.D. Cal. 2007).............................................................passim

In re NAHC, Inc. Securities Litig.,
    306 F.3d 1314 (3d Cir. 2002) .............................................................................12

Int'l Norcent Tech. v. Koninklijke Philips Elecs.,
    2007 U.S. Dist. LEXIS 89946 (C.D. Cal. Oct 29. 2007)...........................................4

InterVest, Inc. v. Bloomberg, L.P.,
    340 F.3d 144 (3d Cir. 2003) ................................................................................4

Kasada, Inc. v. Access Capital, Inc.,
    2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 10, 2004) .................................passim

Kendall v. Visa U.S.A., Inc.,
    2008 U.S. App. LEXIS 5032 (9th Cir. Mar. 7, 2008) ........................................4, 8

Korea Kumho Petrochemical v. Flexsys Am. LP,
    2007 U.S. Dist. LEXIS 61373 (N.D. Cal. Aug. 4, 2007) ........................................19

Lantec, Inc. v. Novell, Inc.,
    146 F. Supp. 2d 1140, 1151 (D. Utah 2001),
    aff'd, 306 F.3d 1003 (10th Cir. 2002) ...............................................................11

Larry V. Muko, Inc. v. Southwestern Pennsylvania Bldg. & Constr.,
    670 F.2d 421 (3d Cir.),
    cert. denied, 459 U.S. 916, 103 S.Ct. 229 (1982)................................................17

Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,
    475 U.S. 574, 106 S. Ct. 1348 (1986) ..................................................................8

Metro Video Dist. v. Vestron Video, Inc.,
    1990 U.S. Dist. LEXIS 18739 (D. P.R. Feb. 8, 1990)............................................15

Michelman v. Clark-Schwebel Fiber Glass Corp.,
    534 F.2d 1036 (2d Cir.),
    cert. denied, 429 U.S. 885, 975 S.Ct. 236 (1976)........................................2, 14, 15

Monsanto Co. v. Spray-Rite Service Corp.,
    465 U.S. 752, 104 S.Ct. 1464 (1984) ...................................................................8

Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co.,
    472 U.S. 284, 105 S.Ct. 2613 (1985) ..................................................................17

Phillips v. County of Allegheny,
    515 F.3d 224 (3d Cir. 2008) ..........................................................................passim

Schuylkill Energy Res. Inc. v. PP&L Co.,
    113 F.3d 405 (3d Cir.),
    cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997)...............................................19

Staehr v. Hartford Fin. Svcs. Group, Inc.,
    460 F. Supp. 2d 329 (D. Conn. 2006)..................................................................................12

Tunica Web Advertising v. Tunica Casino Operators Ass'n, Inc.,
    496 F.3d 403 (5th Cir. 2007) ...........................................................................................18

Venture Technology, Inc. v. National Fuel Gas Co.,
    685 F.2d 41 (2d Cir.),
    cert. denied, 459 U.S. 1007, 103 S.Ct. 362 (1982)..........................................................11

Westerfield v. Quizno's Franchise Co., LLC,
    527 F. Supp. 2d 840 (E.D. Wis. 2007) ..............................................................................8

**Statutes and Rules**

15 U.S.C. § 1 (Sherman Act)....................................................................................passim

Fed. R. Civ. P. 8.........................................................................................................9

Fed. R. Civ. P. 12(b)(6) .............................................................................................1, 9

New York Donnelly Act...............................................................................................2

**Treatises and Publications**

VI Phillip E. Areeda, Antitrust Law an Analysis of Antitrust Principles
    and Their Application (2006) ........................................................................................2, 17

Richard A. Duncan and Brian S. McCormac, If It Takes Two to Tango,
    Do They Conspire?: Twombly and Standards of Pleading Conspiracy,
    8 Sedona Conf. J. 39 (Fall 2007)......................................................................................8

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| JEOFFREY L. BURTCH, CHAPTER 7 TRUSTEE, FACTORY 2-U STORES, INC., et al., <br><br> Plaintiff, <br><br> v. <br><br> MILBERG FACTORS, INC., CAPITAL FACTORS, INC., THE CIT GROUP/COMMERCIAL SERVICES, INC., GMAC COMMERCIAL FINANCE LLC, HSBC BUSINESS CREDIT (USA) INC., ROSENTHAL AND ROSENTHAL, INC., STERLING FACTORS CORPORATION, WELL FARGO CENTURY, INC., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 1:07-cv-00556-JJF-LPS

### REPLY BRIEF OF DEFENDANTS GMAC COMMERCIAL FINANCE LLC, STERLING FACTORS CORPORATION AND WELLS FARGO CENTURY, INC. IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS

Defendants GMAC Commercial Finance LLC ("GMAC CF"), Sterling Factors Corporation ("Sterling") and Wells Fargo Century, Inc. ("Wells Fargo Century") respectfully submit this Memorandum of Law in further support of their motion to dismiss the Complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim and because it is time-barred.

## I.     **INTRODUCTION**

"'Does Macy's Tell Gimbel's?'" So opens the Consolidated Brief in Opposition to Defendants' Motions to Dismiss of Plaintiff ("Pltf. Opp."). Focusing upon the sharing of credit information at issue here, the answer to that question is "yes."

Communications between competitors as to a customer's creditworthiness are not *per se* actionable, and the Complaint in the within action fails to state a viable claim under Section 1 of the Sherman Act and New York's Donnelly Act. The holding and validity of <u>Michelman v. Clark-Schwebel Fiber Glass Corp.</u>, 534 F.2d 1036, 1048 (2d Cir.), <u>cert</u>. <u>denied</u>, 429 U.S. 885, 975 S.Ct. 236 (1976), has not changed. Over 30 years ago the Court of Appeals reversed a jury verdict in favor of the plaintiff and observed: "the dissemination to competitors of information concerning the credit-worthiness of customers aids sellers in gaining information necessary to protect themselves against fraudulent or insolvent customers." Contrary to Plaintiff's characterization, <u>Michelman</u> involved the exchange of current customer credit data, not mere historic information.

The black letter rule contained in Defendants' opening memoranda of law (at p.21) is similarly straightforward:

> [N]o boycott conspiracy is inferable from the circulation of credit information. Circulating such information does not imply any agreement to use it in any particular way . . . . . Reinforcing the reluctance to see any conspiracy here is the obvious social utility of allowing creditors to gather relevant information about borrowers.

VI Phillip E. Areeda, <u>Antitrust Law An Analysis of Antitrust Principles and Their Application</u> at ¶ 1423b (2006).

After <u>Bell Atlantic Corp. v. Twombly</u>, ___ U.S. ___, 127 S. Ct. 1955 (2007), a complaint must plead enough facts that, if proven true, could survive a motion for

summary judgment.  Failing which, dismissal is required.  However, according to Plaintiff Jeoffrey L. Burtch ("Plaintiff"), Chapter 7 Trustee of Factory 2-U Stores, Inc. ("Factory 2-U"), Twombly changed little if anything.  Plaintiff's contention is premised upon a faulty reading of Phillips v. County of Allegheny, 515 F.3d 224 (3d Cir. 2008), in which the Third Circuit analyzed the impact of Twombly.  Plaintiff argues that: "The holding in Twombly does not alter the standard for a motion to dismiss." Pltf. Opp. at 14.  Plaintiff's reading of Twombly and Phillips is inaccurate.  Plaintiff simply ignores the Phillips Court's conclusion that "[a]fter Twombly, it is no longer sufficient to allege mere elements of a cause of action; instead, 'a complaint must allege facts suggestive of [the proscribed] conduct.'" Phillips, 515 F.3d at 233.

It cannot reasonably be argued that Plaintiff has pleaded enough facts that, if proven true, could survive a motion for summary judgment.  The Complaint lacks any factual allegations even suggesting an agreement or, indeed, any allegations from which an agreement among Defendants could be inferred, and thus fails to meet the pleading requirements enunciated in Twombly.  The Complaint lacks specific allegations of actionable conduct taken individually or collectively by all or some of the Defendants.  Regardless of how Plaintiff wishes to cast the Complaint, as alleging an unalloyed conspiracy (Pltf. Opp. at 2) or as alleging that Defendants engaged in parallel conduct, the Complaint must fail.

The Complaint relies upon twenty-seven conversations as the alleged factual foundation for the conclusory allegation that collusive and parallel action by the eight defendants "ultimately" occurred.  The inadequacy of the Complaint is underscored because none of the alleged conversations reflect or even suggest any agreement among

the participants. Rather, the alleged conversations reflect independent action. Unilateral activity by a defendant, no matter the motivation, cannot give rise to a section 1 violation.' InterVest, Inc. v. Bloomberg, L.P. , 340 F.3d 144 (3d Cir. 2003) at 159." Cosmetic Gallery, Inc. v. Schoeneman Corp., 495 F.3d 46, 54 (3d Cir. 2007). Just because Plaintiff says that there was an agreement does not mean that Plaintiff has satisfactorily pleaded the existence of an agreement. Kendall v. Visa U.S.A., Inc., 2008 U.S. App. LEXIS 5032 (9th Cir. Mar. 7, 2008) (Court of Appeals affirms dismissal of antitrust claims against banks and credit card consortium where complaint failed to specify date and terms of alleged agreement); In re Late Fee & Over-Limit Fee Litig., 528 F. Supp. 2d 953 (N.D. Cal. 2007) (antitrust claim against credit card issuers dismissed where Complaint did not substantiate allegations of agreement); Int'l Norcent Tech. v. Koninklijke Philips Elecs., 2007 U.S. Dist. LEXIS 89946, at *32 (C.D. Cal. Oct 29. 2007) (quoting *DM Research, Inc. v. Coll. of Am. Pathologists, 170 F.3d 53, 56 (1st Cir. 1999),* the term "agreement" without more facts is insufficient to satisfy Twombly); Hackman v. Dickerson Realtors, Inc., 520 F. Supp. 2d 954, 965 (N.D. Ill. 2007) (under Twombly "[e]ncouragement absent an agreement is not enough").

Significantly, *Plaintiff has now expressly devalued the significance of the factual allegations of his Complaint and explicitly acknowledged that actions he previously complained of do not constitute the "conspiracy" that allegedly lies at the heart of this action.* Pltf. Opp. at 20, n.9. Rather, according to Plaintiff, the conspiracy was only first "implemented after September 17, 2003 (the date of the last factor-to-factor conversation alleged in the Complaint), when [Plaintiff alleged] the defendants either denied or limited credit to Factory 2-U at approximately the same time." Apparently, in his attempt to

stave off dismissal on the ground that the Complaint is time-barred, Plaintiff now contends that whatever occurred prior to September 17, 2003 does not constitute "concerted action" for purposes of Section 1 of the Sherman Act, because the alleged "conspiratorial agreement between the factors" had not been implemented. (Pltf. Opp. at 20, n.9). This concession warrants the dismissal of this action. If the conspiracy had not been implemented until after September 17, 2003, the conversations described in the Complaint, which actually reflect independent credit evaluations by the Defendants, do not, by themselves, constitute tortious or actionable conduct and no facts are alleged with regard to any post - September 17, 2003 agreements.

The Complaint does not spell-out "who" are the alleged conspirators, who *limited* credit, or how much credit was supposedly granted and how much credit was denied. Plaintiff fails to state if the alleged limited credit was set at identical amounts by the unidentified co-conspirators, or why, in the absence of an allegation that the credit was identical, the granting of limited credit is actionable.

In fact, with regard to defendants GMAC, Sterling and Wells Fargo Century, the allegations of the Complaint coupled with Plaintiff's concession unequivocally demonstrate the lack of any actionable conduct allegedly committed by these three defendants. In fact, conversations referencing those defendants highlight independent action by each of the defendants.

The last conversation alleged in the Complaint to which Wells Fargo Century was a "party" purportedly occurred on April 23, 2003, more than four months *prior* to September 2003. At that time, Wells Fargo Century continued to decline credit checking sales to Factory 2-U (Complaint, ¶ 35(q)) in a manner consistent with Wells Fargo

- 5 -

Century's prior independent decision reflected in an alleged March 13, 2003 telephone conversation. Complaint, ¶ 35(k). The last conversation alleged in the Complaint to which Sterling was a "party" purportedly occurred on September 15, 2003, at which time Sterling stated that it was "approving orders up to a specified limit." Complaint, ¶ 35(x). The last conversation alleged in the Complaint to which GMAC CF was a "party" purportedly occurred on September 15, 2003. In that "conversation," GMAC CF allegedly stated that it might actually "increase" Factory 2-U's "credit limit depending on Factory 2-U's financial plan." Complaint, ¶ 35(y). In other words, the telephone conversations depicted in the Complaint support the conclusion that each of GMAC CF, Sterling and Wells Fargo Century elected to pursue its own independent credit policy toward Factory 2-U.

In his Opposition (Pltf. Opp. at 8), Plaintiff writes that the alleged conspiratorial agreements included:

> (3) agreements on the terms on which credit would be extended by Defendants to Factory 2-U for its purchases from garment manufacturers, including without limitation time to pay (e.g., net 60, net 30, net 15, or other terms), the date on which time to pay would commence (e.g., from receipt of goods or date of invoice), and whether a security deposit would be required from Factory 2-U; and (4) agreements on whether surcharges would be imposed by Defendants on garment manufacturers as a condition of financing Factory 2-U's purchases from those manufacturers.

Yet, the Complaint lacks any allegations setting forth the actual credit terms and purported surcharges -- despite Plaintiff having access to the invoices which would list the applicable credit terms, discounts, special charges and interest rates that applied to sales to Factory 2-U. The Complaint contains no allegations referring to the substance or

- 6 -

content of received invoices -- *despite the fact that those invoices which were issued to Plaintiff are the best evidence of whether or not Defendants had engaged in a conspiracy.* Plaintiff's failure to plead facts based on information in Plaintiff's possession is fatal to the maintenance of this action.

The Complaint should be recognized for what it is:   Twombly redux.   In Twombly, the complaint alleged that "Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to prevent competitive entry in their respective local telephone and/or high speed internet services parkets [sic] by, among other things, agreeing not to compete with one another . . . ." Pltf. Opp. at 17.  Plaintiff's Complaint bears striking similarity in its use of buzz words and cant.  The Complaint alleges that after "their unlawful discussions and communications, the Defendants took concerted action which harmed Factory 2-U's ability to conduct business.   Specifically, the Defendants declined and limited credit to Factory 2-U at approximately the same time. The Defendants based their future course of action on their previous unlawful communications and discussions." Complaint, at ¶ 37.

Under Twombly, Plaintiff's words are neither enough to state a claim nor sufficient to defeat a motion to dismiss.

## II.    ARGUMENT

### A.    PLAINTIFF'S OPPOSITION MISSTATES THE PLEADING REQUIREMENTS IN THE AFTERMATH OF TWOMBLY

As Phillips v. County of Allegheny makes clear, Twombly altered the landscape for what constitutes a viable pleading.  Phillips, 515 F.3d at 233.  In the aftermath of Twombly, a complaint must plead enough facts that if proven true, could survive a

motion for summary judgment.  In <u>Cosmetic Gallery, Inc. v. Schoeneman Corp.</u>, 495

F.3d 46 (3d Cir. 2007), the Third Circuit affirmed the district court's grant of summary

judgment in favor of defendant and the dismissal of plaintiff's state law antitrust claim.

<u>Cosmetic Gallery</u> explicitly held that <u>Twombly</u> was not to be read in isolation from

<u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 106 S. Ct. 1348 (1986)

and <u>Monsanto Co. v. Spray-Rite Service Corp.</u>, 465 U.S. 752, 764, 104 S. Ct. 1464

(1984).  According to the Court:  "*Twombly* also signaled the vitality of *Matsushita* and

*Monsanto* . . . ."  <u>Cosmetic Gallery, Inc.</u>, 495 F.3d at 54.  In other words, to survive a

motion to dismiss, an antitrust complaint needed to allege facts that if proven true would

be sufficient to withstand a motion for summary judgment.

Consistent with this approach, the Court in <u>Kendall</u> held that to:  "state a claim

under § 1 of the Sherman Act, 15 U.S.C. § 1, claimants must plead not just ultimate facts

(such as a conspiracy), but evidentiary facts . . . ."  <u>Kendall</u>, 2008 U.S. App. LEXIS 5032,

at *10; <u>Westerfield v. Quizno's Franchise Co., LLC</u>, 527 F. Supp. 2d 840, 857 (E.D. Wis.

2007) ("<u>Twombly</u> . . . requires, especially for antitrust claims, that a complaint set forth

sufficient facts to show plausible grounds exist for believing a violation has occurred.");

Richard A. Duncan and Brian S. McCormac, <u>If It Takes Two to Tango, Do They</u>

<u>Conspire?:  Twombly and Standards of Pleading Conspiracy</u>, 8 SEDONA CONF. J. 39

(Fall 2007) ("In antitrust law, it appears that *Twombly* has harmonized the pleading

standard in Section 1 cases with the proof standard required to survive summary

judgment under *Matsushita*.").

In <u>Phillips</u> the Third Circuit grappled with the requirements of <u>Twombly</u>, and

concluded that a short and plain statement of entitlement would no longer suffice to

satisfy the requirements of Rule 8 and Rule 12(b)(6). Rather, according to <u>Phillips</u>, <u>Twombly</u> injected two new factors in evaluating the viability of a Complaint. First, the plaintiff must now make a factual showing within the complaint that it is entitled to relief. Second, the "'no set of facts" language articulated in <u>Conley v. Gibson</u>, 355 U.S. 41, 78 S.Ct. 99 (1957) was no longer the operative standard in evaluating a complaint.

The Complaint does not make the requisite showing that Plaintiff is entitled to relief. The conversations referenced in paragraph 35 of the Complaint actually reflect that Defendants acted independently and in various ways. According to the Complaint, factors would sometimes extend credit, at other times factors would deny credit, and at other times factors would curtail credit. But, none of these actions are alleged in the Complaint as either having been done in lockstep or as being the result of an agreement between the Defendants. Thus, the "factual" allegations contained in the Complaint actually describe *independent* conduct, not a conspiracy and not an agreement among competitors.

Plaintiff's assertion (Pltf. Opp. at 8) that paragraph 35 of the Complaint sets forth sufficient information to support his allegations is mistaken. The various telephone conversations alleged in paragraph 35 of the Complaint actually demonstrate the absence of *any* agreement among the Defendants. Paragraph 35 is replete with alleged instances of credit actually being *extended*, shows variations in the credit lines established by some of the Defendants, and demonstrates that the factors were *not* acting in tandem. The insufficiency of the Complaint is highlighted by the fact that Factory 2-U actually received invoices reflecting credit terms, and necessarily was in a position to refer to those invoices and terms in his Complaint, but failed to do so. Under these

- 9 -

circumstances, the omission of those allegations from the Complaint can only be attributed to Plaintiff's judgment -- that the actual records of the business transactions would demonstrate the absence of any conspiracy. Accordingly, the Complaint can only be described as inadequate.

Paragraph 35(a) through (f) describes how between February 2002 and August 2002 the factors did *not* even attempt to reach a unified credit policy toward Factory 2-U, and that some Defendants had different credit lines in place. Indeed, one factor had renewed a credit line after it had expired. Paragraph 35(g) through (j) illustrates that in late 2002, while two factor Defendants had "pulled" credit lines, some factor Defendants had not. Paragraph 35(k) through (t) depicts how in March and April 2003, three factor Defendants were extending credit on sales to Factory 2-U and two factor Defendants had declined credit on sales to Factory 2-U.

Similarly, paragraph 35(u) through (aa) demonstrates how in the spring and late summer of 2003, three factor Defendants were extending credit, two factor Defendants were declining credit and one factor Defendant was even contemplating expanding credit. Nevertheless and notwithstanding the pled inconsistencies in the credit made available to Factory 2-U, each factor who allegedly participated in the described telephone conversations is accused of concerted action reflecting price-fixing and boycott.

Taken together with Plaintiff's belated admission that no conspiracy had been implemented at the time these "conversations" occurred, the conversations do not evidence a conspiracy. Plaintiff contends that the alleged "conspiratorial conversations *ultimately* resulted in an agreement between the defendants, to cut off or severely limit Factory 2-U's credit *at approximately the same time*" (Pltf. Opp. at 11, emphasis added.)

On page 20 of his opposition, Plaintiff charges that the "conspiratorial agreement between the factors was implemented *after* September 17, 2003." (Emphasis in original.) However, there is no allegation of any facts supporting the conclusory claim that an "agreement" was "ultimately" reached between the Defendants.

Alleging "frequent meetings between the alleged conspirators . . . will not sustain a plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement." Venture Technology, Inc. v. National Fuel Gas Co., 685 F.2d 41, 45 (2d Cir.), cert. denied, 459 U.S. 1007, 103 S. Ct. 362 (1982). *See* Lantec, Inc. v. Novell, Inc., 146 F. Supp. 2d 1140, 1151 (D. Utah 2001), aff'd, 306 F.3d 1003 (10th Cir. 2002) ("[T]he mere showing of close relations or frequent meetings between alleged conspirators to violate antitrust laws will not meet plaintiff's burden absent evidence which would permit the inference that those close ties led to an illegal agreement").

Here, there is no "allegation that a particular plaintiff, once refused to be credit checked by one factor, was subsequently refused by each of the other factors . . . There is no allegation that a particular garment manufacturer applied for and was refused to be credit checked by all of the defendants." Kasada, Inc. v. Access Capital, Inc., 2004 U.S. Dist. LEXIS 25257, at *16 (S.D.N.Y. Dec. 10, 2004).

According to Plaintiff, the conspiracy was only first "implemented" *after* September 17, 2003. Indeed, according to Factory 2-U's prior public admissions, the alleged "conspiracy" had not even taken hold by mid-November 2003. Thus, in addition to failing to meet the pleading requirements enunciated in Twombly, the allegations contained in the Complaint are at odds with Factory 2-U's prior public statements.

On November 12, 2003, Factory 2-U issued a press release (which it also filed as an exhibit to its Form 8-K filed with the U.S. Securities and Exchange Commission ("SEC") on November 13, 2003 *of which the Court may take judicial notice*) that challenges the Plaintiff's version of events. See In re NAHC, Inc. Securities Litig., 306 F.3d 1314, 1331 (3d Cir. 2002) (judicial notice of SEC filings and press releases); In re Ditech Communs. Corp. Secs. Litig., 2007 U.S. Dist. LEXIS 78411 (N.D. Cal. Oct. 11, 2007) (complaint dismissed and court took judicial notice of press releases); Staehr v. Hartford Fin. Svcs. Group, Inc., 460 F. Supp. 2d 329, 333-335 (D. Conn. 2006) (action dismissed as court took judicial notice of regulatory filings and press releases). Factory 2-U's then-Chairman and Chief Executive Officer stated in the November 12 press release that Factory 2-U was approaching Christmas "in an excellent inventory position." Stated differently, in mid-November 2003, Factory 2-U was still not complaining about credit availability, trade credit or inventory.

Although Factory 2-U had reportedly underperformed in the quarter ended November 1, 2003, Factory 2-U attributed the results to "lower than anticipated markdown volume and distribution costs . . . ." Factory 2-U did not blame the factors or trade creditors for its woes. Now, by contrast, Plaintiff blames the defendant factors for Factory 2-U's demise in an apparent attempt to salvage this baseless litigation. Indeed, as was made clear in Defendants' opening memorandum of law, Factory 2-U's pre-petition public filings with the SEC lauded the credit community for keeping a sinking company afloat during the time period covered by paragraph 35.

In re Late Fee & Over-Limit Fee Litig., 528 F. Supp. 2d 953 (N.D. Cal. 2007), highlights the pleading deficiencies present in the Complaint in this action. There, the

court dismissed plaintiffs' claim under Section 1 of the Sherman Act. Plaintiffs had alleged that defendant credit card issuers had engaged in a conspiracy to set late charges. The court characterized plaintiffs' complaint as follows: "plaintiffs do not identify any actual agreement among the defendants. Rather, the plaintiffs allege that some of the defendant banks, at some times during the last decade had late fee terms on some credit card accounts that were in part parallel behavior, or 'lockstep pricing' of late fees." 528 F. Supp. 2d at 961. Here, Plaintiff's Complaint suffers from the same deficiencies because it fails to identify any "actual agreement." Indeed, Plaintiff does not even demonstrate "lockstep pricing," and the conversations pleaded in the Complaint fail to support the inference of any express or tacit agreement among the Defendants.

Citing Twombly and In re Baby Food Antitrust Litig., 166 F.3d 112, 131-32 (3d Cir. 1999), where the Third Circuit affirmed summary judgment for the defendant despite evidence of exchange of price information among rivals, the district court in Late Fee concluded that these allegations were insufficient to state a cognizable claim. 528 F. Supp. 2d at 962. The court pointed out that the allegations of conspiracy were undermined by the fact that the pricing paths of some of the alleged conspirators differed from the pricing paths chosen by other conspirators -- much as the alleged conduct of the factor Defendants here varied from factor to factor. The court in Late Fee observed that the complaint in Late Fee contained a chart showing actual fees charged by the defendants. According to the court, "The same chart shows that the three other alleged coconspirators have *different* late-fee price levels. The complaint further explains that the defendants' fee levels have all followed different pricing paths at different times, not even roughly in parallel." (Emphasis in original). 528 F. Supp. 2d at 962. The holding

- 13 -

of <u>Late Fee</u> is made all the more compelling by the absence in the Complaint before this Court of any pricing data -- data which necessarily is in Plaintiff's hands.

Further undermining the plaintiffs' case in <u>Late Fee</u> was the absence of an allegation specifying when the parties allegedly agreed to enter into the conspiracy. Like the Complaint before this Court, the complaint in <u>Late Fee</u>, failed to identify the "when, where and by whom" in respect of the underlying agreement. As stated in <u>Late Fee</u>, the complaint "does include several conclusory allegations that the defendants agreed to increase late fees, but it provides no details as to when, where, or by whom this alleged agreement was reached." <u>Id</u>. This omission doomed the complaint in <u>Late Fee</u> and should similarly put an end to this action.

**B.    THE EXCHANGE OF CONTEMPORANEOUS CREDIT INFORMATION DOES NOT GIVE RISE TO A CLAIM UNDER SECTION 1 OF THE SHERMAN ACT**

Plaintiff asserts that creditors may not share contemporaneous credit data, and instead may only share historical credit information. Plaintiff also contends credit information is akin to price data, and that therefore the sharing of credit information should be treated in the same manner as the sharing of price data. Plaintiff further argues (Pltf. Opp. at 14) that the <u>Michelman</u> case primarily involved historic data and therefore is inapposite to the case before this Court. Plaintiff's position is odds with the law.

At the outset, "under the federal antitrust laws decisions involving credit have always required and produced totally different analyses from those involving prices." <u>Metro Video Dist. v. Vestron Video, Inc.</u>, 1990 U.S. Dist. LEXIS 18739, at *28 (D. P.R. Feb. 8, 1990). According to <u>Metro Video Dist.</u>, "decisions regarding agreements

- 14 -

pertaining to prices and exchanges of price information have consistently been held to violate the Sherman Act." Id. In contrast, "it has long been held that the exchange of information between competitors regarding the credit worthiness of customers does not violate any provision of the federal antitrust laws."

In Kasada, Inc. v. Access Capital, Inc., 2004 U.S. Dist. LEXIS 25257 (S.D.N.Y. Dec. 10, 2004), the Court rejected plaintiff's contention that the exchange of contemporaneous credit information constituted a violation of Section 1 of the Sherman Act. Allegations that defendants had engaged in group meetings and had access to each others' databases were insufficient to state a legally viable claim under section 1 of the Sherman Act. According to the Court:

> Although "information exchange" has been found to be an example of a facilitating practice that a court could use to help support an inference of a price-fixing agreement, the exchange of information between business firms concerning the credit-worthiness of customers has long been held not to violate the *Sherman Act*." . . . Furthermore, "the dissemination to competitors of information concerning the credit-worthiness of customers aids sellers in gaining information necessary to protect themselves against fraudulent or *insolvent* customers." *Michelman,* 534 F.2d at 1048. Lastly, the Second Circuit has held that "it is not a violation of *Section 1* to exchange such information, provided that any action taken in reliance upon it is the result of each firm's independent judgment, and not of agreement." Id. (Emphasis added.)

Kasada, 2004 U.S. Dist. LEXIS 25257, at *18-*19.

In his opposition, Plaintiff does little to distinguish Kasada. Plaintiff argues that Kasada is distinguishable from the present case because the Plaintiff here has alleged that an agreement was reached between the Defendants as to credit terms. However, as

demonstrated above, the Complaint lacks any allegation of a specific and identifiable agreement having been reached between the parties as to the extension of credit. <u>Kasada</u> should apply here with equal force.

Nor does <u>Catalano, Inc. v. Target Sales, Inc.</u>, 446 U.S. 643, 100 S.Ct. 1925 (1980), cited by Plaintiff bear upon the present motion. In <u>Catalano</u>, a group of beer distributors agreed to fix the credit terms on which they would sell beer to retailers. Specifically, the wholesalers agreed to require that they "would sell to retailers only if payment were made in advance or upon delivery" and to discontinue the prior practice of "extend[ing] credit without interest up to the 30- and 42-day limits." (446 U.S. at 644, 100 S.Ct. at 1926).

Here, unlike <u>Catalano</u>, there is no allegation of uniformity as to any specific credit term imposed upon Plaintiff, nor is there an allegation of an agreement setting a uniform policy applicable to all "retailers." The allegations the Court found sufficient in <u>Catalano</u> are not found in Plaintiff's Complaint. The price-fixing conspiracy that was the subject of <u>Catalano</u> bears no resemblance to the independent credit decisions reflected in the conversations depicted in paragraph 35 of the Complaint.

## C. PLAINTIFF'S ALLEGATIONS OF A <u>BOYCOTT DO NOT WITHSTAND SCRUTINY</u>

Plaintiff's allegations of a boycott are insufficient to state a claim. At the outset, Plaintiff has not sufficiently pleaded the existence of a conspiracy. Plaintiff has not demonstrated that the alleged boycott has damaged any of Defendants' competitors and therefore the boycott allegations should be dismissed. Further, in his opposition Plaintiff has ignored <u>Eichorn v. AT&T Corp.</u>, 248 F.3d 131, 143 (3d Cir.), <u>cert. denied</u>, 534 U.S.

- 16 -

1014, 122 S.Ct. 506 (2001) and IDT Corp. v. Building Owners & Managers Assn. Intl., 2005 U.S. Dist. LEXIS 33208, at *36 (D. N.J. Dec. 14, 2005), cited in Defs. Opening Brief at 21. Both Eichorn and IDT make clear that in the Third Circuit allegations of a boycott rising to the level of a *per se* antitrust violation will generally only occur when the boycott is designed to exclude competitors. Plaintiff also ignores the black letter rule that the exchange of credit information does not constitute a *per se* boycott violation of Section 1 of the Sherman Act. VI Phillip E. Areeda, Antitrust Law An Analysis of Antitrust Principles and Their Application at ¶ 1423b (2006).

Eichorn is particularly instructive. There, the Third Circuit affirmed the grant of summary judgment in favor of defendant telecommunications companies, and rejected plaintiffs' claim that Defendants' refusal to hire plaintiffs gave rise to a boycott claim under Section 1 of the Sherman Act. The Court observed: "While plaintiffs contend the no-hire agreement was per se illegal because it was a horizontal group boycott and a price fixing conspiracy, we can find no support within the relevant case law for this label." 248 F.3d at 143. In reaching its determination, Eichorn quoted both Northwest Wholesale Stationers, Inc. v. Pac. Stationery & Printing Co., 472 U.S. 284, 294, 105 S.Ct. 2613, 2619 (1985) and Larry V. Muko, Inc. v. Southwestern Pennsylvania Bldg. & Constr., 670 F.2d 421, 429 (3d Cir.), cert. denied, 459 U.S. 916, 103 S.Ct. 229 (1982). According to Eichorn, both cases stand for the proposition that a *per se* boycott is generally restricted to cases involving classic boycotts -- horizontal boycotts that seek to exclude competitors.

Tunica Web Advertising v. Tunica Casino Operators Ass'n, Inc., 496 F.3d 403, (5th Cir. 2007), cited by Plaintiff, is thus wholly inapposite. In Tunica Web Advertising,

- 17 -

the Court of Appeals reviewed the dismissal of an antitrust action brought by a dot.com advertiser against a group of casino operators who allegedly refused to deal with the plaintiff. There, the Fifth Circuit reversed the grant of summary judgment because: (a) all of the defendants had agreed not to deal with the plaintiff dot.com site, and (b) *the defendants had refused "to advertise on "tunica.com," in the hope that the value of the domain name would decrease and the defendant-casinos could buy it at a later date.* Tunica, unlike the Complaint at issue here, involved detailed factual allegations of concerted activity designed to achieve a bargain purchase of a desirable "domain name." Here, Plaintiff has not alleged a blanket refusal to factor invoices issued to Plaintiff. Rather, the Complaint describes how different factors acted differently at different times. Further, there is no, and there cannot be, allegation in the Complaint that Defendants implemented a program to drive Factory 2-U out of business so that it could be later acquired by Defendants.

De Filippo v. Ford Motor Co., 516 F.2d 1313 (3d Cir.), cert. denied, 423 U.S. 912, 96 S.Ct. 216 (1975), is similarly of no assistance to Plaintiff. In De Filippo the Third Circuit reversed a judgment in favor of plaintiff - automobile dealer who claimed that he suffered from a group boycott by Ford and its local dealers. The Court of Appeals held that concerted action by automobile manufacturer and dealers which prevented plaintiff -- automobile dealer from acquiring a dealership on special terms but did not deprive manufacturer of freedom to sell to plaintiff at the same prices and conditions as it made available to its other dealers -- did not constitute a group boycott. The holding of DeFilippo becomes even more compelling here because the Complaint does not (and cannot) allege that Factory 2-U was a competitor of any of the Defendants.

- 18 -

**D.    PLAINTIFF'S ALLEGATIONS OF
       ANTITRUST INJURY ARE MERITLESS**

The Complaint lacks any allegation identifying any possible injury to any entity

other than Factory 2-U.  Moreover, the Complaint fails to identify how other possible

customers of factored clients were hurt by Defendants' alleged actions.  Likewise, the

Complaint fails to demonstrate why the relevant market is not broader than factoring.

Bldg. Materials Corp. of Am. v. Rotter, 2008 U.S. Dist. LEXIS 11917 (E.D. Pa. Feb. 15,

2008) (antitrust counterclaim dismissed where defendant failed to plead cross-elasticity

of markets).  These omissions warrant the dismissal of the Complaint.

Nor can Plaintiff rely upon Schuylkill Energy Res. Inc. v. PP&L Co., 113 F.3d

405 (3d Cir.), cert. denied, 522 U.S. 977, 118 S.Ct. 435 (1997), to avoid dismissal of the

Complaint.  First, in Schuylkill Energy the Court actually affirmed the dismissal of the

complaint for failing to adequately plead antitrust injury.    Second, any expressed

reluctance to review antitrust injury on a motion to dismiss is questionable under

Twombly and Schuylkill.  Korea Kumho Petrochemical v. Flexsys Am. LP, 2007 U.S.

Dist. LEXIS 61373, at *8, n.1 (N.D. Cal. Aug. 4, 2007).  Indeed, as the holding in Bldg.

Materials illustrates, analysis of antitrust injury allegations on a motion to dismiss is

definitely within the ken of the court.

### III.    CONCLUSION

For the reasons stated above, and in the Memorandum of Law in Support of

Defendant The CIT Group/Commercial Services Inc.'s Motion to Dismiss, which is

adopted and incorporated herein, Defendants GMAC Commercial Finance LLC, Sterling

Factors Corporation and Wells Fargo Century, Inc. respectfully request that this Court

grant their motion to dismiss the Complaint in its entirety, with prejudice.

Dated: April 2, 2008

/s/ Denise Seastone Kraft
Stuart M. Brown (#4050)
Denise Seastone Kraft (#2778)
Mark D. Olivere (#4291)
919 N. Market Street, Suite 1500
Wilmington, DE 19801
Tel: (302) 777-7770
Fax: (302) 777-7263
smbrown@eapdlaw.com
dkraft@eapdlaw.com
molivere@eapdlaw.com
Counsel for Defendants
GMAC Commercial Finance LLC,
Sterling Factors Corporation and
Wells Fargo Century, Inc.

OF COUNSEL:

Daniel Wallen
Bernard Beitel
Lloyd M. Green
OTTERBOURG, STEINDLER, HOUSTON
 & ROSEN, P.C.
230 Park Avenue
New York, New York 101069
(212) 661-9100

## CERTIFICATE OF SERVICE

I, Denise Seastone Kraft, hereby certify that on April 2, 2008, the **Reply Brief of Defendants GMAC Commercial Finance LLC, Sterling Factors Corporation and Wells Fargo Century, Inc. in Further Support of Their Motion to Dismiss** was electronically filed with the Clerk of the Court using CM/ECF which will send notification of such filing(s) to counsel of record and the document is available for viewing and downloading from CM/ECF.

*/s/ Denise Seastone Kraft*
Denise Seastone Kraft (No. 2778)